UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RICHARD A. VIDAL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-117-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| LEXINGTON FAYETTE | ) | **MEMORANDUM OPINION** |
| URBAN COUNTY GOVERNMENT, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Defendants Lexington Fayette Urban County Government ("LFUCG") and Officer Ronald Kornrumpf, individually and in his official capacity, have moved for dismissal of the claims against them. [Record No. 12] Alternatively, the defendants have moved for summary judgment. [Record No. 12] The defendants argue that the constitutional and state common law claims stemming from Plaintiff Richard A. Vidal's arrest are meritless, fail on statute of limitations grounds or are otherwise barred by official governmental and qualified immunity. For the reasons outlined below, this Court will dismiss all claims against the LFUCG and Kornrumpf in his official capacity and all state law claims against Kornrumpf in his individual capacity. The claims against Kornrumpf in his individual capacity for constitutional violations brought pursuant to 42 U.S.C. § 1983 remain pending.

**I.**

Kornrumpf responded to a noise complaint at a residence at 468 Park Avenue, Lexington, Kentucky on April 28, 2012, between 1:30 and 2:00 a.m. [Record No. 26] He approached the back door and questioned the occupant of the residence, Vidal. [*Id.*, p. 2]

Vidal allegedly refused to provide his name. [*Id.*, ¶ 11; Record No. 21, pp. 9–10] Vidal claims that Kornrumpf then "forced" his way in to residence "without warning or provocation" by "blocking the door with his foot and pushing it violently inward." [Record No. 26, pp. 2, 5 ¶¶13–17] Kornrumpf then purportedly held Vidal on the floor in a "chokehold," causing pain and discomfort. [*Id.*] There was not a search or arrest warrant. [*Id.*, ¶¶ 20–21] Kornrumpf placed Vidal under arrest and charged him with: (i) violation of a local noise ordinance; (ii) disorderly conduct in the 2nd degree; (iii) resisting arrest, and (iv) person 18–20 in possession of alcohol. [Record No. 26, p. 6 ¶ 29] On June 21, 2012, Vidal pleaded guilty to the noise ordinance violation. [*Id.*, ¶ 31] The remaining charges were dismissed, with prejudice. [*Id.*, ¶ 30]

Based on the allegations set out above, Vidal asserts claims of: (i) unlawful arrest; (ii) unlawful detention and confinement; (iii) use of excessive force; and (iv) refusing or neglecting to prevent harm under § 1983. [*Id.*, pp. 6–13] Additionally, Vidal asserts state law claims for: (i) malicious prosecution; (ii) malicious abuse of process; (iii) false imprisonment; (iv) assault; (v) battery; (vi) intentional infliction of emotional distress; (vii) negligent infliction of emotional distress; (viii) negligence; and (ix) gross negligence. [*Id.*, pp. 13–20]

## II.

The defendants request dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, summary judgment under Rule 56. [Record No. 12] Rule 12(d) provides that if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The obligation to convert to a summary judgment motion is mandatory if matters outside the

pleadings are not excluded by the Court. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.,* 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(d) to a Rule 12(c) motion). However, a court may consider matters outside of the pleadings without converting to a Rule 56 motion if the documents — in this case the state court criminal proceedings, which are a matter of public record — are "referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). This Court has considered the disposition of the criminal matter, but excluded any consideration of the affidavits filed as attachments to the defendants' motion. *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *2 (W.D. Mich. March 25, 2011) (citation omitted) ("A district court's decision to exclude such materials should be explicit."). Accordingly, this matter will be considered under the Rule 12 standard.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

# III.

### A. Claims against the LFUCG and Kornrumpf, in his Official Capacity, under Section 1983

To state a claim against a municipal entity such as the LFUCG, Vidal must show that it committed some wrong. *Doe v. Clairborne Cnty., Tenn.,* 103 F.3d 495, 507 (6th Cir. 1996) ("[R]espondeat superior is not available as a theory of recovery under section 1983."). "To establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation[] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). The plaintiff must show that the "custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)). Further, to "survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)).

The LFUCG argues that these allegations are no more than mere recitals of the legal requirements for a § 1983 action against a county. Thus, it asserts that Vidal has not pled

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Vidal disagrees, arguing that he "need only plead a constitutional violation and allege that the violation was caused by an official policy or custom" to meet the notice requirements of Rule 8. [Record No. 21, p. 8] He argues that it would be premature to dismiss these claims without allowing discovery. *See Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 348 (6th Cir. 2007) ("We wonder how [the plaintiff] would necessarily know, at the point of his *complaint,* and without the benefit of discovery, whether such a custom or policy might exist . . . .").

Vidal's arguments, however, have been consistently rejected by district courts following *Twombly* and *Iqbal*. *See Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) ("In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal's* standards strictly."); *Scott v. Giant Eagle, Inc.*, No. 1:12-cv-3074, 2013 WL 1874853, at *4 (N.D. Ohio May 3, 2013). Heightened pleading standards do not apply to § 1983 claims. *Leatherman v. Tarrant Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993). Nonetheless, a complaint must contain more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss. "Plaintiffs are in fact required to identify the practice or policy that forms the basis of their claim." *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010). And to survive a motion to dismiss, the plaintiff "must describe what the official custom or policy was and describe how it was violated." *Kustes v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 5:12-323-KKC, 2013 WL 4776343, at *5 (E.D. Ky. Sept. 3, 2013).

In *Kustes,* the plaintiff used language similar to that included in Vidal's Amended Complaint, without the benefit of any factual allegations relating to the municipal defendant. *Id.* at 3–5. Rejecting the plaintiff's argument that he "need only plead a constitutional violation and alleged that the violation was cause by an official policy or custom" to defeat a motion to dismiss, the court found that a plaintiff must identify and describe the official custom or policy. *Id.* at 5.

In *Hutchison*, the plaintiff's complaint included specific details of the events of the underlying incident — a traffic stop — but did "not include any facts related to a municipal policy on probable cause and traffic stops, or a municipal custom, policy or practice regarding drivers or passengers who are disabled." *Hutchison*, 685 F. Supp. 2d at 751. The plaintiff did not include any additional factual support for his allegation that the defendant "failed to adequately train its officers in stopping vehicles and/or ordering passengers out of those vehicles in disregard of their disabilities and injuries." *Id.* Thus, the complaint "'stop[ped] short of the line between possibility and plausibility' regarding municipal liability." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Although the district court noted that it was "uncomfortable with this pleading standard as now applied, especially in the context of Section 1983 and municipal liability[,]" the municipal claims were dismissed by the Court. *Id.*

Vidal's Amended Complaint suffers from the same deficiencies described in these cases. He states that the LFUCG "negligently trained and/or supervised" Kornrumpf with respect to "arrest," "proper police procedures," "use of excessive force," and "use of force and seizure policies." [Record No. 26, p. 7 ¶¶ 38, 56] The Complaint states that "the conscious failure" of the LFUCG to investigate the "obvious" unlawful conduct of

Kornrumpf exhibited deliberate indifference. [*Id.*, pp. 8, 9 ¶¶ 41, 47]  Vidal also alleges that the LFUCG "adopted policies, practices, or customs that allow . . . the use of excessive force when other more reasonable and less drastic measures are available." [*Id.*, ¶55]  Finally, the Amended Complaint states that the LFUCG "failed to instruct, supervise, control, and discipline . . . [p]olice [o]fficers" and, more specifically, that the LFUCG

> lacked a proper policy, procedure, or custom, or had an insufficient/improper policy, custom or procedure, to instruct, train, supervise, and/or control in Lexington Police Officers properly finding probable cause to support a warrantless arrest, following the explicit city ordinances regarding entry onto private residences for enforcement of city ordinances, and applying or using excessive force in stopping and/or arresting private citizens such as Plaintiff.

[*Id.*, pp. 11–12 ¶¶ 60, 61]  These "naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *Kustes*, 2013 WL 4776343, at *4 (citations omitted).

The only specific policy that Vidal references relates to the officer's failure to follow the "explicit city ordinances regarding entry onto private residences for the enforcement of city ordinances." [Record No. 26, p. 12, ¶ 61]  However, as discussed below, a violation of a city ordinance is not alone sufficient rise to a constitutional violation.  Vidal's Complaint lacks any assertions that "would raise a plausible inference of wrongdoing against the LFUCG." *Kustes*, 2013 WL 4776343, at *4 (citation omitted).  Because the Amended Complaint merely recites the legal requirements for a claim against a municipality without any factual allegations that would "raise a right to relief above the speculative level," Vidal's § 1983 claims against the LFUCG will be dismissed. *Twombly*, 550 U.S. at 555.

The claims against Kornrumpf in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent."

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, the official-capacity claims against Kornrumpf will be dismissed as well.

### B. Section 1983 Claims against Kornrumpf in his Individual Capacity

#### 1. Fifth and Fourteenth Amendment Claims

Vidal brings claims against Kornrumpf in his individual capacity for unlawful arrest and unlawful detention and confinement in violation of his Fourth, Fifth and Fourteenth Amendment rights. Kornrumpf argues -- and this Court agrees -- that Vidal does not state a cause of action under the Fifth or Fourteenth Amendment. The Fourth Amendment, rather than the Fifth or Fourteenth,[1] is the proper vehicle to "define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (quoting *Gernstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)); *Neyland v. Molinaro*, 368 F. Supp. 2d 787, 791 (E.D. Mich. 2005) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)) ("[S]ubstantive due process does not extend to claims for false arrest and . . . such claims are properly brought under the Fourth Amendment."); *Kustes*, 2013 WL 4776343, at *2 (citing *Jackson v. Cnty. of Washtenaw*, 310 F. App'x 6, 7 (6th Cir. 2009)) (dismissing Fifth and Fourteenth Amendment claims for pretrial deprivation of liberty). Accordingly, Vidal's claims under the Fifth and Fourteenth Amendment will be dismissed.

---

1 The Fourth Amendment is applicable to the states through the Fourteenth. *Payton v. New York*, 445 U.S. 573, 576 (1980).

## 2. Fourth Amendment Claims

Kornrumpf's motion to dismiss Vidal's Fourth Amendment claim for unlawful arrest will be denied. Vidal is estopped under Kentucky law from contesting the existence of probable cause for the noise ordinance violation. However, his allegations that Kornrumpf entered his home without a warrant and without exigent circumstances are sufficient to state a claim for a constitutional violation at this stage of the case.

First, to prevail on an unlawful arrest claim under § 1983, Vidal "must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest . . . is reasonable . . . where there is probable cause to believe that a criminal offense has been or is being committed."). The determination of whether probable cause existed for an arrest "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. Vidal admitted that he violated the noise ordinance in state court. However, he argues that his guilty plea is irrelevant to his claims because a noise ordinance violation is not an offense subject to arrest under Kentucky law and local ordinance. [Record No. 16]

Generally, a guilty plea in state court by a defendant and the "finding of guilt and imposition of fines by that court estop [state court defendants] from . . . asserting in federal court that the defendant police officers acted without probable cause." *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988). "[I]ssues actually litigated in a state-court proceeding are entitled to preclusive effect in a subsequent federal § 1983 suit to the extent provided by the law of preclusion in the state where judgment was rendered." *Donovan v. Thames*, 105 F.3d 291, 294 (6th Cir. 1997) (citing *Allen v. McCurry*, 449 U.S. 90, 102 (1980)). Kentucky

permits estoppel regarding "matters which were necessarily involved and determined in the former action." *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995) (quoting *Sedley v. City of West Buechel*, 461 S.W.2d 556, 558–59 (Ky. 1970)). Thus, in Kentucky, "under proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings." *Donovan*, 105 F.3d at 295 (citing *Gossage*, 904 S.W.2d at 248); *see Stoner v. Wills*, No. 3: 08-69-DCR, 2009 WL 3126312, at *2–3 (E.D. Ky. Sept. 24, 2009).

Even assuming Kentucky law or a city ordinance prohibits arrests for noise ordinance violations as Vidal argues, the parameters of the Fourth Amendment are defined independently of state law requirements. The Supreme Court has concluded that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while the States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Stated differently, a state may not permit arrests for certain crimes, or under certain circumstances, but that policy choice will not make the arrest any more or less constitutional under the Fourth Amendment. Thus, a state's explicit choice of a more restrictive option among the range of constitutionally permissible actions "does not render the less restrictive options unreasonable, and hence unconstitutional." *Id.* at 174. "Probable cause to arrest exists if the facts and circumstances within an officer's knowledge warrant a reasonable belief that a person has committed, is committing, or is about to commit a crime. This includes [a] violation of a city ordinance." *Neyland v. Molinaro*, 368 F. Supp. 2d 787, 792 (E.D. Mich. 2005) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)); *see Pyles v. Raisor*, 60 F.3d 1211, 1216 (6th Cir. 1995)

(finding an arrest for a misdemeanor in violation of Kentucky state law was not actionable under § 1983). Thus, Vidal's admission that he violated the noise ordinance precludes any argument that the Kornrumpf lacked probable cause on that charge.

A finding of probable cause for the noise ordinance violation alone, however, does not require dismissal of Vidal's Fourth Amendment claim. At this stage of the proceedings, it is unclear when and under what circumstances Kornrumpf entered the home. Vidal argues that the arrest was not based on a violation of the noise ordinance, but on other charges which occurred only after Kornrumpf entered the premises. [Record No. 21, pp. 4-5] "While a warrantless felony or misdemeanor arrest in a public place does not violate the Fourth Amendment . . . a firm line has been drawn at the entrance to the home." *Denton v. Rievley*, 353 F. App'x 1, 4 (6th Cir. 2009) (citations and quotations omitted) (unpublished table opinion); *see Payton v. New York*, 445 U.S. 573, 590 (1980) ("Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant.")

Based on an analogy[2] to traffic stops, Vidal argues that the initial encounter was related to the noise violation but that Kornrumpf's subsequent entry into the dwelling and arrest was without probable cause for the additional charges of disorderly conduct, possession of alcohol or resisting arrest. The Court is not persuaded that this matter is analogous to a traffic stop. However, Vidal's allegations that he was arrested inside his home are sufficient to overcome Kornrumpf's motion to dismiss. *Denton*, 353 F. App'x at 6

---

2   Vidal relies on a Tenth Circuit case addressing an unreasonable extension of a traffic stop, *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222–23 (10th Cir. 2013), and a district court decision holding that officers lacked probable cause to arrest the plaintiff for unlawfully resisting or obstructing a police officer, *Bostic v. Rodriguez*, 667 F. Supp. 2d 591, 607–09 (E.D.N.C. 2009). Neither case is probative of the issue presented.

("[W]arrantless in-home arrests for misdemeanor offenses absent consent or exigency violate the Fourth Amendment.").

Vidal's Complaint also suggests that the arrest may have occurred at the back door of the residence which was open at some point during the parties' encounter. [Record No. 26, p. 5 ¶¶ 9–12] The doorway of a house is a public place when there is no expectation of privacy. *United States v. Santana*, 427 U.S. 38, 42 (1976) ("What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). Once in the doorway of an individual's home, one is "not merely visible to the public but [is] exposed to public view, speech, hearing, and touch as if . . . standing completely outside." *Santana*, 427 U.S. at 42; *but see, e.g., Loria v. Gorman*, 306 F.3d 1271, 1285–86 (2d Cir. 2002) (finding that exigent circumstances did not justify officer's entry several feet into home for arrest for violation of noise ordinance).

Kornrumpf's only argument that he is entitled to qualified immunity is based on his assertion that Vidal has not stated a sufficient claim for a violation of the constitution. However, when the Court considers the factual allegations regarding the conduct attendant to the arrest and the location of the arrest, Vidal has sufficiently stated violation of the Constitution. Thus, Kornrumpf's motion to dismiss Vidal's Fourth Amendment claims will be denied.

### C. State Law Claims

#### 1. Claims Subject to Dismissal on Statute of Limitations Grounds

Kentucky applies a one year statute of limitations for abuse of process, false arrest, assault, battery, negligence and gross negligence. KRS § 413.140; *Dickerson v. City of*

*Hickman*, No. 5:08cv-P53-R, 2010 WL 816684, at *5 (W.D. Ky. March 4, 2010) (finding one-year statute of limitations period for abuse of process claim). Vidal's arrest occurred on or about April 28, 2012. Therefore, the statute of limitations on these state law torts ran on or about April 29, 2013. [Record No. 26, ¶¶ 7–8] The state law claim for malicious prosecution is also subject to a one-year statute of limitations, which accrues from the date of the termination of criminal proceedings. *Dunn v. Felty*, 226 S.W.3d 68, 72–73 (Ky. 2007). Because the criminal action ended on June 21, 2012, the limitations period for malicious prosecution ended on June 22, 2013.

Vidal's Complaint was filed on April 26, 2013, within a year of the events at issue. This ends the statute of limitations inquiry for the federal claims. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint"). However, "[w]hen a federal court hears a state-law claim, it not only applies the relevant state statute of limitations; it must also apply state law to determine when an action 'commences' and the limitations clock stops ticking." *Gibson v. Slone*, No. 10-145-ART, 2011 WL 2009815, at *1 (E.D. Ky. May 23, 2011) (citing *Powell v. Jacor Commns. Corp.*, 320 F.3d 599, 602 (6th Cir. 2003)). Under Kentucky law, an action commences "on the date of the first summons or process issued in good faith from the court having jurisdiction." KRS § 413.250. While "[t]he taking out of summons is presumptive evidence of an intention to have it served in due course . . . that presumption may be rebutted by the facts." *Rucker's Adm'r v. Roadway Exp.*, 131 S.W.2d 840, 842 (Ky. 1939) (citing *Louisville & Nashville R.R. Co. v. Little*, 95 S.W.2d 253, 255 (Ky. 1936)). Good faith requires "a bona fide intention to have the summons filled out and signed by the clerk, accompanied by a bona fide, unequivocal intention to have it served or proceeded on presently or in due course or without abandonment." *Id*. "Action and intention combined

constitutes the commencement of the suit, because a summons filled out and signed with no intention of having it served is altogether inoperative." *Id*.

In the present case, the summons were initially issued on April 26, 2013, the same day as the Complaint was filed. However, Vidal did not attempt to serve the defendants with summons. Instead, on July 2, 2013, more than eight weeks after filing the Complaint and after the statute of limitations expired, he sent a "Notice of a Lawsuit and Request to Waive Service of a Summons" to the defendants. By its terms, the Notice and Request required a response within thirty days. The record contains no response from any of the defendants.

No further attempts were made to serve the defendants with summons until January 2, 2014, following this Court's entry of a show cause order regarding why the matter should not be dismissed for failure to comply with Rule 4(m). [Record No. 3] In his response, Vidal's attorney requested additional time to serve the defendants. [Record No. 4] To demonstrate good cause for his failure to serve the summons, Vidal relied on: (i) his attempt to obtain a waiver of service in July 2013; and (ii) the fact that the reminders for the deadline for service were placed on his calendar for July and August of 2014, rather than 2013. [Record No. 4] Following an extension by the Court, the defendants were served with summons on January 30, 2014, and January 31, 2014. [Record Nos. 5, 9, 10, 11]

Courts have consistently found that an attorney's explicit request to delay summons exhibits a lack of good faith and prevents an action from commencing. *See Gibson*, 2011 WL 2009815 at *1. At the other end of the spectrum, courts have consistently found that where an attorney has done everything in his or her power to serve the summons but failed due to mistake or inattention, for instance, by attempting service at the wrong address, the summons was issued in good faith. *See Roehrig v. Merchants & Businessmen's Mut. Ins.*

*Co.*, 391 S.W.2d 369, 371 (Ky. 1965); *Hausman's Adm'r v. Poehlman*, 236 S.W.2d 259 (Ky. 1951). Here, the Court must determine whether an extensive delay in service alone negates the presumption of good faith.

The Kentucky Court of Appeals, then Kentucky's highest court, examined the effects of delay in service in *Rucker's*, 131 S.W.2d at 842. The attorney for the plaintiff delayed service of the summons for six weeks. *Id.* at 841–42. At first, the summons was not issued because the attorney could not locate the name of the defendant's process agent. *Id.* Then, while trying to find the proper party, the attorney's wife became ill. *Id.* Noting that the attorney's wife was hospitalized for three of the six weeks that that summons was delayed, the court found that the evidence indicated a good faith intention to have the "summons presently executed without abandonment of such intention." *Id.* at 843. Nevertheless, the attorney's negligence was "perilously near to barring his client's right of action." *Id.* As to the length of delay required to negate a finding of good faith intention, the court cautioned:

> A mere negligent delay, if of sufficient length of time, may have the effect of indicating a lack of good faith in having the process issued. *We would be willing to say that a delay of six weeks in placing the summons in process of execution, without excuse and without circumstances indicating a present intention of having the summons executed, would be sufficient to show a lack of good faith.* We hold only that the circumstances shown in this particular case are not such as to negative a lack of good faith at the time the summons was issued or to indicate abandonment of intention to have it executed in due course.

*Id.* (emphasis added); s*ee also Brock v. Turner Fuel Co.*, 178 S.W.2d 427, 734 (Ky. 1944) (dismissing claims on statute of limitations grounds where there was an unexcused delay of six months before service of summons).

Vidal's attorney claims that the eight-week delay between filing the Complaint and requesting waiver occurred because the plaintiff "was assessing whether to amend the

- 15 -

Complaint . . . or proceed and amend subsequent to waiver or service." [Record No. 21, p. 17] But there is no reason why this analysis would take eight weeks. Moreover, aside from a mistake in scheduling, the plaintiff offers no explanation for the excessive delay following the request for waiver in July 2013. This Court cannot agree that the eight-month delay in service was minimal or that the newspaper article in which Vidal's attorney was quoted was sufficient notice to the defendants as Vidal suggests. [Record No. 4-2] Instead, the eight-week delay in sending the notice and request for service, as well as the eight-month delay in service of the summons, negates the presumption of good faith. *Rucker's*, 131 S.W.2d at 842. Accordingly, the Court will dismiss Vidal's state law claims against all the defendants[3] for abuse of process, false arrest, assault, battery, negligence, gross negligence, negligent infliction of emotional distress and malicious prosecution because the action was not timely commenced within the one-year statute of limitations period.

### 2. **Intentional Infliction of Emotional Distress**

The tort of outrage, also known as intentional infliction of emotional distress, is typically considered a "gap-filler," meaning that the tort is available where a more traditional tort would not provide an appropriate remedy. *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky.App. 1999) (citing *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 299 (Ky. App. 1993)). In this case, more traditional state law torts apply, such as battery, assault and false arrest, which Vidal has pleaded in his Amended Complaint. Nonetheless, "[t]he tort of

---

3    Even if the action were timely commenced, the fate of several claims would remain the same. All state law claims against the LFUCG and Kornrumpf would be barred by sovereign immunity. *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003) (finding that county governments are cloaked with the same sovereign immunity from common law claims as the Commonwealth itself.); *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) ("[W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled . . . .").

outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd Co., Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) (citing *Brewer*, 15 S.W.3d at 7–8). Vidal's Complaint merely alleges only that the defendants "knew or should have known that emotional distress was the likely result of their conduct." [Record No. 26, ¶ 94]   Without any allegation that the defendants solely intended to cause extreme emotional distress, Vidal has failed to state a claim for intentional infliction of emotional distress.

Additionally, to prevail on a claim of outrage, "[t]he wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality . . . ." *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000).   "Liability has been found only where the conduct has been . . . so extreme in degree[] as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Runkle v. Fleming*, 558 F. App'x 628, 634 (6th Cir. 2014).  This Court cannot find any specific allegation that is "truly outrageous, intolerable[,]" or would "result[] in bringing one to his knees" as required to maintain an action for intentional infliction of emotional distress. *Osborne*, 31 S.W.3d at 914.   Taking the factual allegations of Vidal's account of the arrest as true, they are insufficient to maintain a claim for outrage.  Vidal's claim for intentional infliction of emotional distress under Kentucky law will be dismissed.

## IV.

For the foregoing reasons, it is hereby

**ORDERED** that:

1. The defendants' motion to dismiss or, in the alternative, for summary judgment [Record No. 12] is **GRANTED**, in part, with respect to the following claims and parties:

    a. Counts I, II, III, and IV, as they pertain to Defendant Lexington-Fayette Urban County Government and Defendant R. Kornrumpf, in his official capacity;

    b. All claims brought under the Fifth or Fourteenth Amendments against Defendant Ronald Kornrumpf, in his individual capacity, in Counts I, II, III, and IV;

    c. Count V, in its entirety;

    d. Count VI, in its entirety;

    e. Count VII, in its entirety;

    f. Count VIII, in its entirety;

    g. Count IX, in its entirety;

    h. Count X, in its entirety;

    i. Count XI, in its entirety;

    j. Count XII, in its entirety; and

    k. Count XIII, in its entirety.

2. The defendants' motion to dismiss [Record No. 12] is **DENIED** with respect to the remaining claims.

3. All claims against Defendant Lexington Fayette Urban County Government having been resolved, it is **DISMISSED** as a party to this action.

This 8th day of September, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge